UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRIAN PAUL JACKSON,

       Plaintiff,                    CIVIL ACTION NO. 09-14089

       v.                              DISTRICT JUDGE GERALD E. ROSEN

COMMISSIONER OF             MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (D/E #10)**
**AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D/E #11)**

**I. Introduction**

     This Social Security case comes before the court on the parties' cross-motions for summary judgment (D/E #10, #11). For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**II. Background**

     On August 28, 2006, plaintiff protectively filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging that he was disabled due to arthritis, high blood pressure and obesity, with an onset date of April 13,

2003. (Tr. 11, 87-95, 132-133) Plaintiff completed high school and three years of college, and has a work history including employment as a general laborer, call center phone operator, and welder. (Tr. 122-126, 138)

The Social Security Administration (SSA) denied plaintiff's applications on January 10, 2007. (Tr. 11-19) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 60) An administrative hearing was held, through videoconferencing, on May 5, 2009 before ALJ John S. Pope. (Tr. 25-48) Plaintiff, represented by appointed counsel, appeared and testified at the hearing. The ALJ also took testimony from a vocational expert (VE).

On June 1, 2009, the ALJ issued a decision denying plaintiff's claim. (Tr. 11-19) The ALJ determined that plaintiff had the following severe impairments: "obesity, arthritis, and chronic pain[.]" (Tr. 13) The ALJ also determined that, although plaintiff's impairments were severe, he did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. (Tr. 13) The ALJ further determined that plaintiff has the residual functional capacity (RFC) to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).[1] More specifically, the claimant can lift and carry 10 pounds; stand and walk at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally balance, stoop, crouch, and climb ramps and stairs; and never kneel, crawl, or climb ladders, ropes, or scaffolds.

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); § 416.967(a).

[Tr. 14]

Taking into account that RFC, the ALJ found that plaintiff is capable of performing his past relevant work as a retail cashier as that work does not require the performance of work-related activities precluded by plaintiff's RFC. (Tr. 18)[2] Accordingly, the ALJ found that plaintiff was not under a disability, as defined by the Social Security Act, from April 13, 2003 through the date of the decision. (Tr. 18) Plaintiff was forty-six years-old at the time of the ALJ's decision. (Tr. 14)

On June 10, 2009, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 6-7) On August 29, 2009, the Appeals Council denied plaintiff's request for review while stating "[w]e found no reason under our rules to review the Administrative Law Judge's decision." (Tr. 2-5) Thus, the ALJ's decision became the final determination of the Commissioner.

On October 15, 2009, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). As noted above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends that the ALJ failed to consider all of his impairments, failed to give the appropriate weight to a treating physician's opinion, and erred by ruling that plaintiff could return to a job he had never worked at. The Commissioner contends that the error in identifying plaintiff's past relevant work was harmless and that the disability determination is supported by substantial evidence.

---

[2]The ALJ also noted that the VE testified that there are approximately 30,000 sedentary, unskilled jobs in the region that could accommodate a hypothetical person with the same restrictions as plaintiff. (Tr. 18)

### III. Legal Standards

#### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). See also 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). See also 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims. 20 C.F.R. §§ 404.1520, 416.920. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the

performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV.**

**A. RFC Determination**

At step four of the five-step used to evaluate both DIB and SSI claims, a determination must be made regarding a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(iv); 20 C.F.R. §§ 404.1545, 416.945. The term "residual functional capacity" ("RFC") is defined as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. 20 CFR §§ 404.1545, 416.945, SS-R 96-8p. In this case, the ALJ found that plaintiff could perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).[3]
> More specifically, the claimant can lift and carry 10 pounds; stand
> and walk at least 2 hours in an 8-hour workday; sit about 6 hours
> in an 8-hour workday; occasionally balance, stoop, crouch, and
> climb ramps and stairs; and never kneel, crawl, or climb ladders,
> ropes, or scaffolds.

[Tr. 14]

In his motion for summary judgment, plaintiff first asserts that, in making that RFC determination, the ALJ failed to consider all the effects plaintiff's ailments and the side effects from his medications had on his ability to work. As stated by plaintiff, SSR 96-8p requires considering the impact of both severe and non-severe impairments on the ability to work and the

---

[3]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); § 416.967(a).

Sixth Circuit has held that an ALJ must provide more than mere lip service to that requirement. See, *e.g.*, Bowen, 874 F.2d 1116, 1123-1124 (1989). Similarly, SSR 96-7p specifically requires that the ALJ consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." Here, plaintiff notes that his treating physician indicated that she was treating plaintiff for numbness left side, HTN, pernicious anemia, OSA, CHF, morbid obesity, OA. (Tr. 311) while also asserting that the ALJ failed to even mention, much less include, those conditions, and any side effects from treatment of those conditions, in the assessment of plaintiff's RFC.

Despite plaintiff's claims to the contrary, it is clear that the ALJ in this case properly considered all of plaintiff's impairments when making the RFC determination. As a general matter, the ALJ stated that, in making the RFC determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 14) and that the ALJ "also considered opinion evidence in accordance with" the regulations (Tr. 14). Moreover, this court would also note that plaintiff is incorrect in asserting that the ALJ never specifically mentioned some of the ailments described above. For example, while plaintiff asserts that the ALJ never considered his sleep apnea, it was specifically mentioned in the ALJ's decision. (Tr. 17). Likewise, while plaintiff claims that the ALJ ignored his obesity, the ALJ expressly found that plaintiff's obesity was a severe impairment (Tr. 13), while also stating that, "[w]hen analyzing the claimant's severe impairments, the undersigned considered the effects of the claimant's obesity in assessing his residual functional capacity for work-related activity" (Tr. 14).

Additionally, even if any impairments were not specifically mentioned in the ALJ's decision, the existence of those impairments is not the issue and the ALJ implicitly addressed the limiting effects of plaintiff's combination of impairments in making the RFC determination. As discussed below, the ALJ's decision contains both an both extensive description of plaintiff's medical history and a thorough RFC determination supported by substantial evidence.

The ALJ first noted, when discussing plaintiff's medical history, that there are only limited medical records related to plaintiff's health prior to July 2007. (Tr. 15) In particular, while plaintiff did see a Dr. Jones from January 2003 to July for various problems, including lower back pain, the record does not demonstrate any significant findings or tests from that period. (Tr. 15, 178-204). The record does demonstrate that plaintiff underwent gastric bypass surgery in 2001 and a tummy tuck in 2002, and the results of those procedures were discussed in a consultative examination with a Dr. Sachdev on November 16, 2006. (Tr. 205-207) On that date, Dr. Sachdev recorded that plaintiff had previously weighed up to 680 pounds prior to his gastric bypass surgery, but that he lost significant weight after the surgery and weighed 380 pounds at the time of the examination. (Tr. 205) Dr. Sachdev also noted that plaintiff had a history of lower back pain and pain in the ankles and knees. (Tr. 205) Dr. Sachdev further noted that plaintiff had scarring, discomfort and irritation in his lower abdominal wall following the tummy tuck procedure. (Tr. 205) The consultative examination revealed valgus deformity in plaintiff's bilaterally and a decreased range of motion in the ankles, knees and hips, but plaintiff did bend easily. (Tr. 205-206) Overall, Dr. Sachdev concluded that, plaintiff had done "fairly well" following surgery, but he did have a combination of obesity and arthritis developing in his

joints that limited his activities (Tr. 206-207) As noted by the ALJ, and undisputed by plaintiff, Dr. Sachdev's findings and conclusions are consistent with the ALJ's opinion. (Tr. 18)

On January 9, 2007, a Disability Determination Services Medical Consultant named Beth Mol issued a report and opinion consistent with the ALJ's decision. (Tr. 18, 210-217) Specifically, Mol reviewed the medical evidence and opined that plaintiff could frequently lift and carry up to 10 pounds, stand/walk for up to 2 hours in an 8-hour workday, sit for up to 6 hours in an 8-hour workday, and push or pull without limitation. (Tr. 211) In Mol's opinion, plaintiff could also occasionally climb ramps and stairs, stoop and crouch, but he could not balance, climb ladders, ropes or scaffolds, kneel or crawl (Tr. 212).

On December 14, 2007, plaintiff began treatment with a Dr. Rosemarie Tolson and, while Dr. Tolson's ultimate opinions regarding plaintiff's limitations was rejected by the ALJ for the reasons discussed below, the course of Dr. Tolson's treatment also provides support for the ALJ's RFC determination. At the first visit, plaintiff denied having upper body pain and stated that his pain was primarily in his legs, knees, hips, and feet. (Tr. 275) However, during the examination, plaintiff had no obvious joint deformity and he had no significant pain when Dr. Tolson put his knees, hips and ankles through passive range of motion. (Tr. 275) Plaintiff also exhibited 5/5 muscle strength and negative straight leg raising bilaterally. (Tr. 275). Dr. Tolson prescribed Neurontin for the joint pain and ordered a CT scan. (Tr. 275)

In January 2008, Dr. Tolson noted in progress notes that she had learned that plaintiff had been seeing both her and Dr. Jones for prescription medication. (Tr. 272) Dr. Tolson also noted that plaintiff had been overusing Vicodin and she declined to prescribe it to plaintiff in the

future. (Tr. 272) By March 2008, plaintiff reported to Dr. Tolson that Ultram was offering him better relief and his hypertension was well-controlled with medication. (Tr. 268) In August 2008, Dr. Tolson recorded plaintiff's complaints of ankle swelling and left leg numbness. (Tr. 226-227) However, during the examination, Dr. Tolson observed normal musculature and no tenderness or joint deformity. (Tr. 227) On April 1, 2009, Dr. Tolson identified plaintiff's chronic conditions as skin sensation disturbance on the left side, benign hypertension, pernicious anemia, obstructive sleep apnea, chronic heart failure, morbid obesity, and general osteoarthrosis. (Tr. 319-320) Dr. Tolson also noted at that time that plaintiff was in no apparent distress, and that his extremities appeared normal. (Tr. 320) Plaintiff did exhibit mildly reduced range of motion, moderate pain with motion, and tenderness in his lumbar spine during examination. (Tr. 320) The April 1, 2009 visit was the most recent examination with Dr. Tolson in the record. (Tr. 16)

Plaintiff also underwent a neurological examination with Dr. Umesh Verma in March of 2008. (Tr. 277-279) Upon examination, Dr. Verma noted that plaintiff had isolated symptom of left-sided numbness and that his left side was diminished to light touch, pinprick, temperature, and vibratory sense. (Tr. 278) Dr. Verma's notes also recorded normal motor examination and 5/5 strength in all muscle groups. (Tr. 278) Overall, Dr. Verma concluded that plaintiff's diminished reflexes were likely due to his moderate obesity and that stress could have caused other problems. (Tr. 278-279)

During 2008, plaintiff was seen in emergency rooms at least twice, but neither of those visits suggest limitations on his ability to work greater than those found by the ALJ. On May

2008, plaintiff was in the emergency room with complaints relating to an allergic reaction and examination of his extremities was normal. (Tr. 299-303) Plaintiff was also noted to have adequate strength and full range of motion. (Tr. 301) On December 21, 2008, plaintiff went to the emergency room due to complaints of chest pain. (Tr. 415-417) During that visit, an examination showed no atrophy, abnormal movement, muscle weakness, extremity tenderness, or extremity edema. (Tr. 417) That examination also demonstrated that plaintiff possessed an intact full range of motion in all extremities. (Tr. 417) A cardiological consultation also revealed that plaintiff was reasonable active and vigorous, and that he had a regular cardiac rhythm and rate. (Tr. 415) At that time, plaintiff also stated that typically strenuous activity, like shoveling snow, did not give him symptoms of discomfort. (Tr. 417)

Like the emergency room visits, the results of the medical tests plaintiff has undergone through the years also provide support for the ALJ's decision. A November 17, 2006 x-ray of plaintiff's ankles was negative (Tr. 208-209) while a December 2007 CT scan of plaintiff's brain revealed no significant intercranial abnormality (Tr. 264). On March 23, 2008, chest x-rays showed patchy right upper lobe and right lower lobe pneumonia, along with aortic arteriosclerosis. (Tr. 252) That x-ray did not reveal any enlargement of the heart or pleural effusion. (Tr. 252) In December of 2008, scans of plaintiff's chest showed a left ventricle normal in size, no stress-induced perfusion defect, and no evidence of ischemia or infarction. (Tr. 367-368) On January 6, 2009, a chest CT was negative. (Tr. 365-366) On February 19, 2009, another x-ray of plaintiff's left ankle was negative. (Tr. 361-362) Similarly, an x-ray of

plaintiff's lumbosacral spine demonstrated no acute lumbosacral abnormality and only mild degenerative changes. (Tr. 363-364)

The ALJ also noted that he considered plaintiff's activities when determining plaintiff's RFC (Tr. 18) and those activities provide further support for the ALJ's decision. In October of 2006, plaintiff reported that he had no problems handling personal care tasks, such as dressing, bathing or shaving, and he also could clean the bathroom. (Tr. 142) Plaintiff also reported that he performed light cleaning and shopped for groceries and cleaning supplies. (Tr. 143-144) Similarly, at the hearing before the ALJ, plaintiff testified that his daily activities included doing some light cleaning, running errands, preparing meals, using the computer, and watching television. (Tr. 37-39, 41) Plaintiff also testified that he is able to dress, groom, and bathe himself. (Tr. 39).

Plaintiff did testify that he had limitations greater than those subsequently found by the ALJ (Tr. 28-44), but the ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of his impairments to be not credible (Tr. 17). An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). Here, given plaintiff's medical history, the opinions found in the record and plaintiff's daily activities, the ALJ's credibility determination should be given great weight.

Given the ALJ's extensive discussions relating to plaintiff's medical history and plaintiff's ability to work, it is clear both that the ALJ considered all the effects of plaintiff's impairments and that the ALJ's decision was supported by substantial evidence. Therefore, while plaintiff is correct that some of his non-severe impairments were not directly references in the ALJ's decision, plaintiff's argument should be rejected.

**B.  Treating Physician Rule**

Plaintiff also argues that the ALJ failed to give appropriate weight to the opinion of Dr. Tolson and, by doing so, plaintiff invokes the "treating physician' rule.  The "treating physician" rule provides as follows:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight.  When we doe not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2); 20 C.F.R. 416.927(d)(2).  As the Sixth Circuit stated in Walters, "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  127 F.3d at 529-530.  Indeed, the treating physician rule provides that a "treating source's" opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence" in the record. However, as suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is inconsistent with other substantial evidence in the record. See also Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004)("Treating physicians' opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

In this case, Dr. Tolson provided an assessment and opinion of plaintiff's abilities on April 3, 2009. (Tr. 313-317) In that assessment, Dr. Tolson opined that plaintiff could only stand or walk for a total of 2 hours a day in an 8-hour workday. (Tr. 313) Dr. Tolson also opined that plaintiff could only sit for a total of 6 hours a day, without a need for elevation of the legs, and could rarely twist, stoop, or climb stairs. (Tr. 313-14) Dr. Tolson further opined that plaintiff could not crouch or climb ladders. (Tr. 314) According to Dr. Tolson, plaintiff would need to take hourly, unscheduled breaks to rest during the day, for 20 minutes at a time, and that plaintiff would miss more than 4 work days a month due to the impairments or treatment. (Tr. 313) Overall, Dr. Tolson opined that plaintiff could not perform a full time job on a sustained basis due to his medical problems and limitations. (Tr. 317).

With respect to Dr. Tolson's opinion, the ALJ first noted that, while Dr. Tolson opined that plaintiff had extensive restrictions, the "only treatment the claimant received was medications and office examinations." (Tr. 17) The ALJ also stated:

> The two fill in the blank forms from the claimant's treating source, as discussed above; indicate that the claimant is incapable of even sedentary work. However, those opinions appear to be based on

> the complaints of the claimant, who was noted by his own doctor, to be seeking narcotic pain medication and had received such medication from a different doctor without her knowledge. Additionally, the physical examinations and progress notes from Dr. Tomlin (sic) do not support the extreme limitations set forth in her opinions. Further her opinions are not supported by a narrative nor are they consistent with the diagnostic testing of record. The undersigned agrees with the opinion of the State Agency. The opinion is consistent with the findings of the consultative examination of Dr. Sachdev.

[Tr. 17-18]

To the extent Dr. Tolson opined that plaintiff is disabled and unable to work, the ALJ is free to disregard the opinion. An ALJ is not bound by a treating physician's statement that a claimant is "disabled" or "unable to work." The regulations specifically provide that such a statement is not a "medical opinion" and is thus not entitled to any special deference. 20 C.F.R. §§ 404.1527(a)(2), 404.1527(e)(1); 416.927(a)(2); 416.1527(e)(1). The question of whether a claimant is disabled is reserved entirely to the Commissioner. 20 C.F.R. § 404.1527(e)(1); 20 C.F.R.416.927(e)(1).

Regarding Dr. Tolson's opinion on plaintiff's specific physical restrictions, the ALJ offered several good reasons for rejecting the opinion. The ALJ first noted that Dr. Tolson's treatment appears inconsistent with her later opinion. (Tr. 17-18) Plaintiff's treatment has been very conservative and ALJ considers use of medication and other treatment when evaluating the intensity and persistence of a plaintiff's symptoms, including pain. 20 C.F.R. 404.1529(c)(3)(iv)-(v). Here, both Dr. Tolson and plaintiff were content with a conservative

course of treatment involving medication and office visits. Such conservative treatment suggests that plaintiff's impairments do not rise to the level found by Dr. Tolson.

Moreover, the ALJ noted that Dr. Tolson's opinion contained no narrative or citation to objective findings that were consistent with such limitations and that Dr. Tolson's own progress notes did not support the extreme limitations in her opinions. (Tr. 18) As described above, at plaintiff's first visit with Dr. Tolson, plaintiff denied having upper body pain and, while plaintiff complained of pain in his lower body, plaintiff had no obvious joint deformity and he had no significant pain when Dr. Tolson put his knees, hips and ankles through passive range of motion. (Tr. 275) Plaintiff also exhibited 5/5 muscle strength and negative straight leg raising bilaterally. (Tr. 275) The ALJ also noted that Dr. Tolson's own notes reflect that plaintiff had requested prescription pain medication from another physician and herself, which suggesting misuse of Vicodin. (Tr. 17, 272). Dr. Tolson declined to prescribe it to Plaintiff in the future. (Tr. 272)

Likewise, while plaintiff complained of pain during the August 2008 visit, Dr. Tolson observed normal musculature and no tenderness or joint deformity during the examination. (Tr. 227) Furthermore, during the most recent examination in the record, Dr. Tolson specifically noted that plaintiff was in no apparent distress, and that his extremities appeared normal. (Tr. 320) Plaintiff did exhibit mildly reduced range of motion, moderate pain with motion, and tenderness in his lumbar spine during the examination, but there is no suggestion that plaintiff is limited to the extent later alleged. (Tr. 320)

On the basis of that evidence, the ALJ properly found that Dr. Tolson's opinion of limitations appeared to be based upon Plaintiff's subjective complaints (Tr. 17) and that the

-16-

course of plaintiff's treatment failed to support the extreme limitations found in Dr. Tolson's opinion (Tr. 18).

The ALJ also noted that Dr. Tolson's opinion is not corroborated by other medical evidence. (Tr. 18) As noted above, the treating physician's rule requires that the treating physician's opinion be supported by objective medical evidence and consistent with the record as a whole before it is considered controlling. Warner, 375 F.3d at 390. Here, as described above, plaintiff has undergone a number of x-rays and CT scans without those tests revealing any significant findings. Similarly, while plaintiff was taken to the emergency room on two occasions, those visits only reinforce the ALJ's findings.

Two other medical sources, Dr. Sachdev and Mol, found that plaintiff was somewhat limited in what activities he could perform, but, as noted by the ALJ, the limitations found by those medical sources are consistent with the ALJ's RFC determination. (Tr. 18, 205-207, 210-217)

As noted by the ALJ, Dr. Tolson's fails to explain the basis for her opinion regarding disability. (Tr. 18) Viewing the record as a whole, substantial evidence exists in support of the ALJ's rejection of Dr. Tolson's opinion. Prior to Dr. Tolson's assessment, none of the treating physicians ever discussed any restrictions on plaintiff's activities and the course of the treatment fails to reveal any limitations on plaintiff's ability to work. Moreover, the actual treatment provided to plaintiff was conservative in nature and seemingly inconsistent with Dr. Tolson's subsequent assessment. Reviewing consultants did find that plaintiff's impairments restricted his activities, but those restrictions were not as extensive as those alleged by Dr. Tolson. The

treating physician's rule requires that the treating physician's opinion be supported by objective medical evidence and consistent with the record as a whole before it is considered controlling. Warner, 375 F.3d at 390. Here, as extensively detailed by the ALJ, Dr. Tolson's opinion is neither and substantial evidence supports the ALJ's rejection of Dr. Tolson's opinion.

### C. Past Work

Plaintiff also argues that the ALJ erred by finding that plaintiff could return to a job at which he never worked. As described above, plaintiff had past relevant work as a general laborer, call center phone operator, and welder. (Tr. 122-126, 138) However, the ALJ's decision concludes that plaintiff is capable of performing past relevant work as a retail cashier. (Tr. 18) Specifically, the ALJ stated:

> At the hearing, Julie Bose, an impartial vocational expert, testified that the claimant has past relevant work as a call center operator (retail cashier), which is categorized as requiring sedentary exertion at the unskilled level. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

[Tr. 18]

Plaintiff notes that he has had no "retail cashier" work in the 15 years that preceded the decision and that the job does not fit within the sedentary limitations of plaintiff's RFC as determined by the ALJ. However, while the ALJ clearly erred in stating that plaintiff had worked as a retail cashier, the error was harmless and the ALJ's decision should be affirmed. See Rabbers v. Commissioner Social Sec. Admin., 582 F.3d 647, 654-655 (6th Cir. 2009) (noting that courts generally review decisions of administrative agencies for harmless error). See

also <u>NLRB v. Wyman-Gordon Co.</u>, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (noting that courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality"); <u>Heston v. Comm'r of Soc. Sec.</u>, 245 F.3d 528, 535 (6th Cir. 2001) (affirming the ALJ's decision where the failure to reference a report was harmless). It appears clear that the ALJ mistakenly referred to the retail cashier position when he meant call center operator. The only past relevant work that the VE concluded the hypothetical individual could perform was call center operator (Tr. 46) and the ALJ specifically referred to and relied upon that testimony in his decision (Tr. 18).

With respect to the call center operator position, plaintiff testified that he sat a desk with a computer and called people about delinquent utility bills. (Tr. 31) Plaintiff also stated that his call center job required no technical skill or knowledge, but did involve writing or completing reports. (Tr. 124) At the hearing, the VE testified that this job, as performed by Plaintiff, was sedentary and unskilled. (Tr. 46) Plaintiff does not challenge the VE's testimony in this case. Therefore, substantial evidence supports the ALJ's finding that Plaintiff could perform his past relevant work as a call center operator.

## **V. Conclusion**

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: August 18, 2010

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on August 18, 2010.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan